*In re* MARRIAGE OF SUSAN B. RIESS, n/k/a Susan Greenway, Petitioner-Appellant, and GREGORY W. RIESS, Respondent-Appellee.

Second District   No. 2—93—0224

Opinion filed April 6, 1994.

GEIGER, J., specially concurring.
BOWMAN, J., concurring in part and dissenting in part.

Mauck, Bellande, Baker & O'Connell, of Chicago (Daniel F. O'Connell and Richard C. Baker, of counsel), for appellant.

Dickinson & Amoni, of Aurora (Donald R. Dickinson, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

A judgment of dissolution of marriage was entered on October 10, 1984, for petitioner, Susan B. Riess, n/k/a Susan Greenway (hereinafter the mother), and respondent, Gregory W. Riess (hereinafter the father). The couple had entered into a settlement agreement which was incorporated in the judgment of dissolution. The agreement provided that the mother would retain custody of the couple's infant daughter. After reaching school age, the child attended public school through third grade. At that point, the mother took the child out of public school and for one school year taught the child herself at home. The father filed a petition for a change of custody, arguing that the environment of the child endangered her emotional health and well-being. The trial court issued a written order, changing custody on the basis that a substantial change in the circumstances had occurred and it was against the best interests of the child to maintain custody with the mother. The mother appeals, contending that (1) the trial court abused its discretion in modifying custody because the father failed to prove by clear and convincing evidence that a change of custody was necessary; and (2) the trial court committed reversible error by improperly shifting the burden of proof to the mother. We reverse and remand.

The parties were married on October 17, 1981. The couple had one daughter, who was born on June 22, 1982. The mother filed for dissolution of marriage in 1984. The parties entered into a settlement agreement which provided that the mother would retain custody of the child, and this agreement was incorporated into a final judgment of dissolution which was entered on October 10, 1984. The mother filed a petition to modify the dissolution decree, which was granted, allowing her to move with the child to Arizona. The mother and child moved to Arizona.

Subsequently, the father filed a petition requesting that the order allowing the mother to leave Illinois be rescinded or, in the alternative, that he be granted custody of the daughter. The trial court vacated the previous order which had granted the mother leave to remove the child from the State of Illinois. The trial court issued a rule to show cause regarding removal of the child from the State of

Illinois. The trial court then held the mother in contempt of court for failure to return the minor child to the State of Illinois. The father filed a petition for a change of custody, and the mother responded by sending the judge a letter stating that she could not afford to travel to Illinois to defend herself. The matter was dropped, and neither party further pursued the issue that the mother and child were living in Arizona in violation of the order rescinding leave to depart from Illinois.

From December 1984 through December 1992, the mother and child resided in Tucson, Arizona, and the child had periodic visitation with her father in Illinois. On July 30, 1992, the father filed a petition for change of custody. In his petition the father alleged that the mother had removed the child from public school, that the mother was not properly trained to provide home schooling for the child, and that such education was not in the best interest of the child.

In his case in chief, the father presented testimony of several witnesses. His sister testified that the father and daughter had a "special relationship." His second wife testified that she and the daughter got along well and that she would be happy if the daughter joined their home should the father be awarded custody of the child.

The mother testified as an adverse witness. She testified that she lived in Tucson, Arizona, and had been remarried for 5½ years. She was questioned extensively regarding the previous rulings of the trial court which dealt with taking the child out of the jurisdiction. She testified that she did not receive a copy of the order vacating the prior order which granted her leave to take the child to Arizona. She stated that the father did communicate the content of the latter order to her but she was not sure whether he was lying to her.

The mother testified that she was trained as a cosmetologist and that she had no formal education beyond high school. In order to prepare to home educate, she studied on her own and attended some informal training sessions in subjects such as math, English, social studies, and all the subjects she would be required to teach her daughter. This training went on for two years prior to her removing her daughter from public school. The mother received a computer card from the State of Arizona reporting her teaching certification test scores, which card was introduced into evidence. The mother testified that the card was her certificate that she would need if she were ever challenged to show that she was qualified to home instruct her child. The Arizona laws regulating home schooling require annual testing of the child. The mother testified that she had the child's test scores

with her, although the father's counsel did not ask her to reveal what those scores were, nor did he move to admit them as evidence.

The mother testified that the child had remained in public school through the third grade. She testified that the child's teacher told her that the child would have to repeat third grade if she did not attend summer school. The child could not attend the summer school session because she was to visit her father in Illinois for a month that summer. In the fall of 1991, the mother began home schooling the daughter at the third-grade level.

The mother testified that she did not discuss the home schooling issue with the girl's father before the program began. The mother testified that the father did not object to the mother about the change in schooling, but he did tell his daughter several times on the telephone that he was not happy about it. When asked by the father's counsel about socialization, the mother stated that in addition to home schooling the daughter participated in Sunday school, the AWANA club (a church activity group), and field trips with other home schoolers, and attended church with her family.

The father testified that he lived in Aurora, Illinois, with his second wife, who was pregnant at the time of the hearing. He testified as to his current and previous employment. He testified that he had regular visitation with his daughter for approximately three to four weeks every summer and that he and the mother alternated visitation on the girl's birthday.

The father testified that he originally agreed to the mother moving with the daughter to Arizona, but later moved to vacate the order granting her permission because of what he claimed were "untruths" from the mother. He told the mother of the order which vacated the order giving her permission to remove the child from Illinois. He could not recall telling her that she had been held in contempt. He said that he requested that the mother move back with the girl, or give him custody of the child, both of which she refused.

The father also testified that prior to June 1991 he did not know that his daughter was having problems in school. When his daughter visited him in the summer of 1991, he did not enroll her in summer school, although it was available. He testified that he told the mother he did not want her to home school the daughter and that he preferred to have the girl in either a public or private school. He testified that public schooling was his preference at the time of trial. However, he testified that if the court were to determine that the home schooling should continue, he would be willing to become

qualified to conduct part of the home study program himself so that he could further extend his time with his daughter in Illinois. He testified that if he obtained custody of the daughter he would enroll her in a public school.

He said that he had waited to file his petition for custody because when the girl was younger, he was a single male and he did not think it was possible for him to take care of her. He testified that he and his daughter had spoken about his taking custody of her over the years. He had told her that when he remarried and there was someone else to help, he would want to take custody of her.

He admitted on cross-examination that he had had regular visitation with the daughter in the years 1987 to 1992 and that after each of those visitations he or a member of his family had put the daughter on a plane to send her back to Arizona, against the court order. At the close of the father's case, the mother moved for a directed finding, which was denied.

On direct examination, the mother explained the circumstances surrounding the alleged misrepresentations to her former husband regarding work in Arizona. She stated that before she left Illinois, she had been told that she would have a job with a company in Arizona. When she arrived in Arizona, she was informed that she would not be able to work with that company. However, she obtained a full-time job within two months after getting to Arizona and at that point worked full-time.

With regard to home schooling, the mother testified that she took her daughter out of public school because the child was falling behind in her classes. She learned of her daughter's poor performance through her bad grades, parent-teacher conferences, and the mother's personal observation in class as a teacher's aide. She also stated that the girl received little homework, and that which she did have would be done either incompletely or incorrectly. The mother volunteered as an assistant for her daughter's class one day a week. While doing so, she observed that her daughter was not attending to her school work, but was socializing with the other children.

The mother stated that after her daughter began home schooling she greatly improved her grades and was more respectful to people. As for her written assignments, the mother related that the girl had started off by getting F's and D's on her papers, just as she had done in school. The papers were often incomplete. At the end of the year, she was completing every assignment with C's, B's and some A's. The daughter was also expressing excitement with learning for a change.

The mother testified that the daughter "excelled" through $1^1/2$ grades during the time the mother home schooled her.

With regard to the home schooling, the mother testified that her husband, Kent Greenway, assisted in the instruction, particularly in math, English, and science. He had a four-year college degree and has also passed his certification for home schooling in Arizona.

The judge then conducted an *in camera* examination of the daughter, with a court reporter, outside the presence of counsel. At the time of the hearing the minor was 10 years old. She told the judge she had lots of friends in Arizona and that her mom's sister and dad were there. On the other hand, she said her own father and all her "real relatives" were in Illinois. In addition, her biological father and his wife were going to have a baby, and that was "exciting." She said that home schooling was okay, but she missed being in public school. She said she visited and played with kids her own age and named several of her girlfriends in the neighborhood.

The child testified that she wanted to live in Illinois with her biological father because she missed him a lot and she only got to see him three to four weeks a year. She said that her mother would refuse to let her stay with her father longer. When asked about the situation being reversed so she would live with her father, and visit her mother part of the time, she guessed that something could be worked out wherein she could get to go to Arizona and spend the whole summer.

The trial court entered a written order changing custody from mother to father. We note that although the trial court stated that the order rescinding leave to remove the child from Illinois was in full effect, the trial court did not remark that in order to satisfy the order it would be necessary to change custody to the father since the mother was now married and settled in Arizona. The court found both parties to be fit to exercise custody over the minor. The court found that a substantial change in the circumstances of the minor had occurred since the minor had been removed from public school and was being educated solely through home schooling. The court found scant evidence of the mother's training to home school and noted that the content of the program was uncertain. While not a controlling factor, the court found the minor preferred to live with her father in Illinois. On these bases, the court rescinded leave to remove the child from Illinois, held that it was in the best interest of the minor that she be placed with her father, held that any findings of the prior finding of contempt were barred for lack of prosecution,

and held that the parties were responsible for their own costs and attorney fees.

The mother filed a motion to vacate or reconsider the order changing custody. The court denied the motion in a memorandum opinion stating, in pertinent part:

"Plaintiff further argues that the Court misunderstood the law at the prior hearing and placed the burden on plaintiff to prove that custody should remain with her. With this contention, the Court must disagree. The petition originally filed in this matter alleged a change in circumstances in that plaintiff had removed the child from the State of Illinois contrary to Court order and had removed the child from the public school system and was engaged in home teaching. Those allegations were sufficient to bring those issues before a Court for a determination. One of the advantages of the Court system is that the trier of fact can observe the demeanor of the witnesses. After listening to plaintiff's testimony and observing her demeanor, the Court can best describe her as self-righteously inflexible, a view echoed by the minor who firmly believed her mother would discourage contact with her father. In view of plaintiff's conduct in removing the child from Illinois and her reluctance regarding visitation, the Court cannot discount the minor's fears.

While the Court agrees that home teaching is legal in Illinois, and evidently is in Arizona, such a drastic measure must be supported by some competent, admissible evidence to assure that the child's educational needs are being satisfied. Without such assurances, the Court cannot conclude that it is in the best interests of the minor to be removed from the public school system. This was only one of the issues upon which the Court's decision was based, but a minor's educational foundation must weigh heavily with any Court."

On appeal, the mother argues, *inter alia*, that the trial judge improperly shifted to her the burden of proving that home schooling was in the child's best interests. A review of the record supports this assertion. Consequently, reversal is required.

■ The father filed his petition to modify custody under section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/610(b) (West 1992)). The statute provides in pertinent part:

"The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his

custodian, \*\*\* and that the modification is necessary to serve the best interest of the child." (750 ILCS 5/610(b) (West 1992).)

Thus, to modify a custody order, a petitioner must demonstrate by clear and convincing evidence that (1) a change in circumstances of the child or his or her custodian from those existing under the original order has occurred; and (2) a modification is necessary to serve the best interests of the child. *In re Marriage of Burke* (1989), 185 Ill. App. 3d 253, 259.

In a custody proceeding under section 610(b) the custodial parent enjoys a presumption in favor of his or her continued custody of the child. (*In re Marriage of Andersen* (1992), 236 Ill. App. 3d 679, 681.) "Section 610(b) reflects an underlying policy favoring the finality of child-custody judgments and making their modification more difficult." *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786.

■ In addition, under Illinois law, the custodial parent has the right to determine the type of education the child will receive:

"Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, the custodian may determine the child's upbringing, including but not limited to, *his education,* health care and religious training, unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would clearly be contrary to the best interests of the child." (Emphasis added.) (750 ILCS 5/608(a) (West 1992).)

This policy decision by the legislature is reinforced by the specific terms agreed to by the mother and father in their settlement agreement which was approved by the trial court and incorporated in the divorce decree: "the wife shall have the sole care, custody, control and education of the minor child of the parties hereto, subject only to the reasonable visitation rights of the husband." Thus, since the mother was awarded custody of the child, she had the right to determine how to educate the child.

■ At the oral argument the parties agreed, as do we, that removing the child from school and initiating home schooling constituted a change in circumstances for purposes of section 610(b). Home schooling undertaken haphazardly or without regard to the social detriment that could befall a child who is kept from his or her peer group may have a disastrous effect on the child's educational and social development. The trial judge correctly determined that the child's best interests warranted judicial inspection of the home schooling issue.

However, "[c]hanged conditions, in itself, is not sufficient to warrant a modification in custody without a finding that such changed conditions affect the welfare of the child." (*In re Marriage of Fuesting* (1992), 228 Ill. App. 3d 339, 344.) The father had the burden of proving, by clear and convincing evidence, that a change of custody was in the best interests of the child. (See *In re Custody of Dykhuis* (1985), 131 Ill. App. 3d 371, 373; *In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 499-500.) There is too much confusion in the record on this point.

During his case, the father elicited testimony from the mother which showed that she had no formal education beyond high school except for her cosmetology training. The mother further testified that the training she had for home schooling consisted of "informal" training sessions. She did, however, take State teaching certification tests, submit the scores of these tests to the court as evidence, and state that she was qualified to home school in the State of Arizona.

While the father's counsel inquired of the mother during his case as to the standardized testing scores of the child after home schooling, counsel did not follow up on that line of questioning to ascertain what the scores were or what they meant. Counsel elicited further testimony that the home schooling began in September 1991, even though the mother did not stop working full-time until January 1992, facts from which counsel inferred that the mother could not have been effectively teaching the child if she was employed full-time outside the home. In addition, the mother testified that the child was involved in a Sunday school program at the church, was a member of an AWANA club, participated in home school field trips, and played with the other children in the neighborhood in the afternoons after she was finished with home schooling and the other children got out of school.

The mother testified in her case that the daughter's performance after home schooling greatly improved and that the girl was more respectful to people. In addition, the child had started off by getting F's and D's on her papers, while at the end of the year she was getting C's, B's and some A's. Additionally, the mother testified that her husband, who had a college degree and was certified to home school in Arizona, assisted her in instructing the child. The child testified that she would prefer to live with her father in Illinois and make visits to her mother. The father also testified that should he get custody of the child, he would prefer to send the child to public school.

It is arguably of concern that the mother has no formal education beyond her cosmetology training. We determine that the evidence of her informal training and her completion of some State teaching

tests in Arizona does not demonstrate that she is competent to home school her child. The computer card included in the record and which the mother refers to as her certificate to home school states "Do not report the results of the ATPE to the County Superintendent until all basic skill components have been passed." The purported certificate is unsigned and in reality is a "score report." It does not clearly certify either her or her new husband as qualified for home instruction. The record is also silent as to the result of the county school superintendent's review of the child's annual achievement test results, which is the required Arizona independent evaluation of the child's progress academically. The father's counsel presented scant evidence of standardized test scores, which would have been useful in evaluating how the child was faring in the home schooling in comparison to her peer group which attends public school. In addition, it was argued that the child was well-adjusted socially in that she participated in numerous activities and played with friends in the neighborhood. This court is concerned about the fact that the mother was working full-time for the first few months of the home schooling, as this would seem to detract substantially from the time she could be instructing the child. In addition, although the child expressed a desire to live with her father, the desires of immature children are not controlling. *Shoff v. Shoff* (1989), 179 Ill. App. 3d 178, 185 (case holding preference of eight-year-old child, who did not indicate sound reasoning for preference, was not given considerable weight in custody decision); *cf. In re Marriage of Valter* (1989), 191 Ill. App. 3d 584, 590-91 (case in which trial court assigned some weight to 14-year-old child's preference in assigning custody on basis that child articulated very specific reasons for wishing to live with his mother).

In sum, little evidence was offered that home schooling was having any detrimental effect on the child. Nevertheless, the trial judge modified custody, primarily based on the home schooling issue. The judge's order and memorandum opinion make clear that the judge was unsure about the appropriateness of home schooling for the child. It was the father's job, however, to prove that home schooling was *not* in the child's best interests. The record is weak as to the effect of home schooling on this child.

The reality of the situation before this court is that custody was changed over 18 months ago. The child was 10 years old when she was uprooted and moved across the country. She is now almost 12 years old. She might well be starting junior high school in the autumn of this year. A simple reversal of the circuit court's decision would result in uprooting the child yet again, without regard to

events that may have transpired in the past 18 months. If such a result furthered the best interests of the child, it would be by pure luck. As our colleagues in the first district have stated, the best interests of the child are the paramount concern for appellate courts in custody cases, and "[t]he strictures of the legal system should not operate to cause more chaos." *Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, 929.

■ Our decision, then, is to remand this cause for a full hearing to decide what would be best for this child. Two reasons, both intertwined with the child's best interests, convince us that remand is the preferred route. First, 18 months have passed since the custody change during which time the child went from a 10-year-old being home schooled in Arizona to a girl of almost 12 apparently attending a traditional school in Illinois. How the child has adjusted to these changes is a crucial factor to consider in determining her future. Second, it was never clearly determined whether home schooling was having a positive or negative effect on the child. The father should have proved that home schooling was not in the child's best interests. However, we will not mechanically change custody back to the mother in this case merely because she "won," without examination of the child's best interests.

Although remand in child custody cases is not the norm, it has been done before. In *In re Marriage of Sweet* (1982), 104 Ill. App. 3d 738, remand was ordered because the trial court's order changing custody did not contain statutorily required findings, and there was no evidence in the record as to the suitability of either parent or their homes for custody of the child under current circumstances. (*Sweet*, 104 Ill. App. 3d at 743-44.) In *Krabel v. Krabel* (1981), 102 Ill. App. 3d 251, the court vacated an order denying a petition for change of custody and remanded the case for a hearing on events that had taken place since the denial. (*Krabel*, 102 Ill. App. 3d at 253-54.) The court relied on Supreme Court Rule 366(a)(5) (now, as amended, 157 Ill. 2d R. 366(a)(5)) giving appellate courts the power to make any order a case may require. (*Krabel*, 102 Ill. App. 3d at 253.) The court noted that each putative custodial parent, while otherwise fit, had breached the tenets of fundamental morality, and it was thus appropriate to see which parent had since corrected his or her ways. *Krabel*, 102 Ill. App. 3d at 253-54.

We do not mean to imply that either parent in this case is immoral. The above cases merely show this court's power to protect the child's best interests when appropriate. Use of the power is appropriate in this unique case, despite the concerns of our dissenting colleague. We are not unmindful of the tactical advantage enjoyed by

the father on remand as a result of our decision. We are bound, however, to consider the child's best interests above all other considerations. Our decision today is geared toward meeting that obligation in an informed manner, rather than hoping to meet that obligation by a mechanical application of normal rules.

On remand, the father shall have the burden of proof on the home school issue, assuming that the mother still would plan to home school the child in the event she regained custody. Additionally, the father, having received custody, shall not enjoy a presumption in favor of continued custody. Neither shall the mother benefit from the presumption, in view of the fact that she has not had custody in over 18 months.

For the above reasons, we reverse the judgment of the circuit court of Kane County and remand this cause for further proceedings.

Reversed and remanded.

JUSTICE GEIGER, specially concurring:

I agree that the record in this case does not support a finding that the father adequately proved that the best interest of the child required a change of custody. Further, I agree with Justice Inglis that the proper procedure here is to remand to the trial court for it to hold a hearing on the current best interest of the child. Unlike Justice Bowman, I find that we clearly have authority under *Krabel v. Krabel* (1981), 102 Ill. App. 3d 251, and Supreme Court Rule 366(a)(5) (157 Ill. 2d R. 366(a)(5)) to order the remand. Moreover, my purpose in specially concurring is to emphasize what I consider to be the important aspect of the remand, which is the nature of the hearing required.

As Justice Inglis' majority decision notes, the circumstances of the child weigh against a simple reversal of the trial court's decision to change custody. Clearly, from the appellant's perspective, the most favorable result would be an outright reversal, revesting custody in her without further proceedings. However, despite the fact that we find that the court lacked support for its order, we must not ignore the impact on the child which could flow from that decision.

Here, by virtue of the trial court's change order, the child was removed, albeit inappropriately, from the mother's household and placed in the father's custody. This change resulted in significant geographical dislocation of the child. Furthermore, the parents' differences in schooling philosophy have resulted in the child being placed in a new school environment since the entry of the trial court order. As the majority decision notes, since the court changed her

custody, the child has lived with the father for 18 months—long enough possibly to have adjusted to the many differences in her new surroundings.

Because of the strains that changes in custody place on a child, and because we must give preeminence to the best interest of a child in custody cases (see *Carroll v. Carroll* (1978), 64 Ill. App. 3d 925), a concept which Justice Bowman's dissent generally acknowledges, I agree with Justice Inglis that it would be ill-advised for us merely to order the child automatically uprooted and returned to the mother without regard to the events following the court's change order. While a reversal and a return to the status quo *ante* may do justice in most cases, a determination of the best interest of the child requires that the court take into consideration what impact the experiences of the intervening time between the entry of the lower court order and the mandate of this court have had upon the child.

Under these circumstances, remand for a full hearing without a presumption favoring custody in either the father or the mother is the only proper disposition in this court. Unlike Justice Bowman, who would distinguish *Krabel* because in that case the appellate court was reviewing a trial court decision *not* to change custody, I do not find that this result disfavors the mother. Rather, I find it is the only way to ensure that the court determines the best interest of the child at the present time. By ordering the new hearing with the restrictions as to presumptions, we recognize that the relocation of the child was not the result of improper conduct by either parent, but rather resulted from an error of the court.

I do not find that our remand order in any way conflicts with our mandate under the supreme court rules. Further, if the result of the order is some measure of judicial inefficiency, ensuring that the best interest of the child is protected renders any inefficiency insignificant.

I strongly believe that the only method that can yield a proper result and protect the minor child following the court's erroneous change of custody in this case is a remand for a hearing that takes into account the events since the court's change order. On remand, the court must consider the child's best interest, and although the mother will not automatically regain custody, her position will be supported by our findings here that the father's showing in the original proceedings did not demonstrate that the best interest of the child favored a change of custody to him. After a full hearing the trial court will be in a position to enter an order providing for the best interest of the child in the real world and not as may have appeared two years ago.

JUSTICE BOWMAN, concurring in part and dissenting in part:

I agree with the majority that reversal is proper, but assert that the cause should not be remanded. The majority was correct in determining that the trial court erred in changing custody from the mother to the father. It is clear from the record that the father did not sustain his burden to show that it was in the best interests of the child to change custody to the father.

However, I decline to rely on *Krabel v. Krabel* (1981), 102 Ill. App. 3d 251, as the majority does, to stand for the proposition that Supreme Court Rule 366(a)(5) gives the appellate court the power to remand child custody cases for further evidentiary hearings on the basis of the trial court's error and the need to determine the best interests of the child. In *Krabel*, at issue was the custody of two minor children in a marriage dissolution case. Upon dissolution, custody of the children was awarded to the mother. Three years after the dissolution, the father petitioned for a change in custody on the basis of the mother's cohabitation with her paramour. The trial court denied the petition, and upon appeal, the appellate court vacated the trial court's order and remanded for an evidentiary hearing to determine whether the mother had changed her living situation or had gotten married in the time ensuing since the petition was denied. *Krabel*, 102 Ill. App. 3d at 253-54.

*Krabel* may be distinguished from the present case because in that case no change of custody occurred due to the trial court's decision, so the burden and the presumption which existed at the time of trial in *Krabel* were the same as the burden and presumption in place at the time of the hearing on remand. In contrast, in the present case, while the burden will remain the same, at trial the mother had the presumption in favor of maintaining her custody of the girl. However, upon remand she will be deprived of her presumption since the majority has determined that neither party will have the benefit of that presumption. For this reason, the father unfairly benefits from the majority's decision by having the mother stripped of her presumption.

Furthermore, the majority's ruling gives another advantage to the father: because of the majority's decision, the father will essentially receive another bite of the apple in that he now will be permitted to put on another case to demonstrate that it is in the best interests of the child to award custody to the father. The majority points out (260 Ill. App. 3d at 220) that it was the father's job to show that home schooling was not in the child's best interests. I assert that he did not do that and should not be given a second chance to show that.

Thus, for these two reasons the father is unfairly advantaged and the mother disadvantaged by the majority's decision. Such a decision by the majority renders the trial court's decision meaningless, as it effectively mandates a new trial. For the same reason, it also abrogates judicial efficiency. I do not believe that Supreme Court Rule 366(a)(5) was meant to be expanded in this manner. Although the majority is correct in attempting to consider the best interests of the child, I believe that the majority improperly focuses on that purpose while ignoring the unfair advantages arising under this disposition which are not usually imparted during the appellate process.

For the foregoing reasons, I respectfully dissent.