*In re* MARRIAGE OF RAND E. CHILDERS, Petitioner-Appellee, and JENNIE L. CHILDERS, Respondent-Appellant.

Second District   No. 2—98—0754

Opinion filed May 21, 1999.

Jacquelyn D. Ackert, of Mandrgoc, Brenner & Ackert, of Dixon, for appellant.

Thomas D. Murray, of Dixon, for appellee.

JUSTICE GALASSO delivered the opinion of the court:

The respondent, Jennie L. Childers (Jennie), appeals from an order of the circuit court of Lee County transferring physical custody of Trevor Childers (Trevor) from Jennie to the petitioner, Rand E. Childers (Rand). On appeal, Jennie raises the following issues: (1) whether the trial court misapplied the presumption favoring the present custodial arrangement; (2) whether the trial court erred in determining that Trevor had been integrated into Rand's new family; and (3) whether the trial court's transfer of the physical custody of Trevor from Jennie to Rand was against the manifest weight of the evidence. We reverse and remand with directions.

The following facts are pertinent to our resolution of the issues in this case.

Jennie and Rand's marriage was dissolved on March 16, 1990. The judgment of dissolution of marriage provided that the parties would have joint custody of Trevor, the parties' minor child, with Jennie having physical custody of Trevor, who was then four months of age. Trevor resided with Jennie until August of 1996. In August 1996, the parties agreed that Trevor would live with Rand. This arrangement continued until November 1996, at which time, due to Rand's separation from his wife, Tina, Trevor returned to live with Jennie. By March 1997, Rand had returned to live with Tina and their son, Riley.

According to Jennie, at about age five, Trevor began displaying signs of attention deficit disorder (ADD), which Jennie was familiar with because she works with adults who suffer from behavioral disorders. Trevor demonstrated a very low frustration level and had toilet accidents to obtain attention. He also was very disorganized and needed to be kept on a schedule. Trevor's first-grade teacher suggested that he might be borderline ADD. Jennie discussed the situation with Rand. However, Rand believed that all Trevor needed was his father and that Trevor did not need to see a doctor. Rand told Jennie that she was free to obtain counseling for Trevor but that he would not participate in any way. On July 22, 1997, the parties and Trevor participated in a trophy night for the T-ball activity that Trevor played. At the time, Trevor was soiling his pants on a regular basis

and had done so that evening. In order to avoid going home with Jennie, Trevor asked to go home with his grandmother. When Jennie refused, Trevor threw a temper tantrum. According to Rand, Jennie responded by stating that she could not deal with Trevor's temper tantrums. Rand suggested that Trevor stay with him. Jennie responded that she would have to think about it because she was not sure that she was ready to give Trevor up. Several days later while Trevor was visiting Rand, Trevor called Jennie and asked if he could stay for dinner with Rand. Jennie became very angry and told Trevor that he could stay at Rand's forever. According to Rand, at some point, Jennie agreed that it would be all right for Trevor to stay with Rand since she was having a hard time dealing with his temper tantrums and she could not deal with Trevor any more. After moving in with Rand, Trevor's problem with soiling his pants had greatly improved until these court proceedings began.

According to Jennie, after taking Trevor home from the trophy night, she received a call from Rand, who suggested that Trevor come and stay with him for a while to see if Rand could reestablish his relationship with Trevor. Jennie believed the relationship had suffered during the period when Rand was separated from Tina because Trevor did not have as much contact with Rand as Trevor desired. Rand expressed his belief that Trevor was acting out because he wanted or needed more attention from Rand and that Trevor's behavior problems would end if Trevor came and stayed with him. Jennie denied that she had told Rand that she could not handle Trevor any more and that Rand could take him. Jennie did tell Rand that she believed that Trevor suffered from ADD and needed counseling to resolve his behavioral problems. She told Rand that she could not handle the situation that was caused by Trevor's behavioral problems. After thinking about it a few days, she agreed that Rand should have Trevor during the week. However, there was no mention that the arrangement was to be permanent.

In October 1997, Rand contacted Jennie and agreed with her that Trevor's behavioral problems needed to be addressed. In January 1998, the parties took Trevor to see Dr. Bondy, who diagnosed Trevor as suffering from ADD and prescribed Ritalin. According to Rand, Dr. Bondy indicated that Trevor needed a more structured environment, which Rand believed he was better able to provide. Rand explained that, while living with Jennie, Trevor never knew where he was going to sleep at night since he sometimes slept over at either of his grandmothers' houses or with Jennie's roommate. Now at Rand's, Trevor always knows where he is going to be Monday through Friday. On the other hand, Jennie understood from what Dr. Bondy said that Ritalin was prescribed for Trevor to keep him organized at school.

In its memorandum opinion, the trial court found that the following facts had been established by clear and convincing evidence:

"1. Jennie voluntarily relinquished her role as primary custodian of Trevor. In July of 1997, she said she can't deal with his 'fits anymore' and told Trevor 'You can stay there forever.' Jennie did not take any measures to bring Trevor back into her household until the start of this modification proceeding.

2. Trevor has now become integrated into the family of Rand, his step-mother and brother Riley.

3. This is a situation where the parties *by their conduct* have modified the custody arrangement.

4. These facts establish a material change in circumstances." (Emphasis in original.)

The trial court noted there was a legislative presumption in favor of the present custodial arrangement to promote stability and continuity but then stated as follows:

"The 'present custodial arrangement' created by the consent of Jennie is that Trevor is now under the primary physical care of [Rand] and integrated into [Rand's] family. In this case, 'stability and continuity' is [*sic*] *not* promoted by sending Trevor back to [Jennie], but rather allowing him to *stay where he now is* with [Rand]." (Emphasis in original.)

The trial court then granted the petition to modify. This appeal followed.

Although this case did not involve a request to modify the joint custody arrangement, only the provision relating to physical custody, the trial court determined that section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/610(b) (West 1996)) was applicable to this case. The parties do not offer any authority to the contrary and, therefore, we will apply that statute as well.

■ Section 610(b) provides in pertinent part as follows:

"(b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. *** The court shall state in its decision specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination." 750 ILCS 5/610(b) (West 1996).

Jennie contends, first, that the trial court misconstrued and misap-

plied the presumption favoring the present custodial arrangement by giving Rand the benefit of the presumption based upon its finding that Jennie had consented to Trevor's residing with Rand on a permanent basis. She further argues that, as a result, the trial court inappropriately shifted the burden to her to establish that a change of circumstances had not occurred and that modification was not in Trevor's best interest. Rand argues that the trial court's finding of facts support the trial court's application of the presumption in his favor.

■ Section 610(b) reflects an underlying policy favoring the finality of child custody judgments and making their modification more difficult. Its effect is to create a legislative presumption in favor of the present custodian and environmental relationship that is not to be overturned lightly. *In re Marriage of Wechselberger*, 115 Ill. App. 3d 779, 786 (1983). However, once the trial court has determined that the presumption has been overcome, the court of review will not disturb that determination on appeal unless the trial court's decision was contrary to the manifest weight of the evidence or amounted to an abuse of discretion. *Wechselberger*, 115 Ill. App. 3d at 786.

None of the cases cited by the parties specifically addresses the question raised here, namely, does the term "present custodian" refer to the party with whom the child is residing at the time of the modification proceedings or does it refer to the party identified as the present custodian in the custody agreement? In both *Wechselberger* and *In re Marriage of Stuckert*, 138 Ill. App. 3d 788 (1985), the noncustodial parent had physical possession of the child or children at the time of the modification proceedings. However, in each case, the reviewing court cited the presumption but did not indicate that the presumption now applied to the noncustodial parent on the basis that that parent now had physical possession of the child or children. In *Stuckert*, in denying the noncustodial father's petition to modify custody, the court stated as follows:

"There is an underlying policy favoring finality of child custody judgments, and favoring the *present* custodian so as to promote stability and continuity in the child's custodial and environmental relationship. [Citation.] In fact, this policy is more persuasive when the initial custody determination was made by agreement of the parties. [Citation.]" (Emphasis in original.) *Stuckert*, 138 Ill. App. 3d at 792.

We note that in *In re Marriage of Richmond*, 171 Ill. App. 3d 506 (1988), the court suggested that the policy favoring finality in child custody matters might weigh in favor of continued residential custody with the noncustodial father, where the evidence showed that the child had thrived with the father and that the continued placement

with the father was not the result of the father's wrongdoing. *Richmond*, 171 Ill. App. 3d at 509. The court did not, however, state that the noncustodial father had the benefit of the presumption.

Finally, *Shoff v. Shoff*, 179 Ill. App. 3d 178 (1989), presents a situation somewhat similar to the present case. In that case, the custodial mother had voluntarily surrendered custody of the child to the noncustodial father. Subsequently, the father filed a petition for custody. In upholding the trial court's award of custody to the father, the reviewing court stated:

> "Finally, [the mother] argues that there is a legislative presumption in favor of the present custodian and against modification. While this is true, it must be remembered that the purpose of this presumption is to promote the stability and continuity of the child's custodial and environmental relationships. [Citation.] In the instant case, that goal is better served by modification of custody." *Shoff*, 179 Ill. App. 3d at 186.

■ Cases such as *Shoff* and *Richmond* illustrate situations in which the presumption has been overcome by the noncustodial parent as opposed to having shifted to the noncustodial parent by virtue of that parent having physical possession of the child. Thus, the presumption of continued custody remained with Jennie as the parent having the right of physical possession under the terms of the court-ordered custody arrangement, and that presumption did not shift to favor Rand simply because he had *de facto* physical custody. Therefore, the trial court erred in applying the presumption of continued custody in Rand's favor.

Given our determination of the above issue, we believe that to achieve a just result in this case, the evidence must be evaluated with the proper party, in this case Jennie, being given the benefit of the presumption. We are aware that in *In re Marriage of Riess*, 260 Ill. App. 3d 210 (1994), another panel of this court, while reversing and remanding a decision changing custody from the mother to the father, ordered that, at the new hearing, neither party would have the presumption, the father because he received custody based upon the trial court's erroneous decision, and the mother because she had not had custody in over 18 months. *Riess*, 260 Ill. App. 3d at 221. The court cited no authority for the denial of the presumption. Moreover, we believe that the denial of the presumption to either parent in that case was based upon the particular facts in that case, *i.e.*, the change in custody resulted in the minor child being relocated from Arizona, where the mother resided, to Illinois, where the father resided. The change in physical possession in this case was much less traumatic, due to the fact that Rand and Jennie resided in the same town, which

allowed for visitation on a much more frequent basis no matter which parent had physical custody. We find that *Riess* does not control the present case.

Therefore, we remand this cause to the circuit court for a new hearing on Rand's petition for modification of custody. In conducting the hearing, the trial court shall apply the presumption of custody in Jennie's favor and shall require Rand to prove by clear and convincing evidence that a change in circumstances has occurred requiring modification of Trevor's physical custody in order to serve Trevor's best interests.

The judgment of the circuit court of Lee County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

McLAREN and COLWELL, JJ., concur.