COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Bumgardner
Argued at Alexandria, Virginia


COLLEEN N. BROWN
                                              OPINION BY
v.    Record No. 1830-98-4        JUDGE SAM W. COLEMAN III
                                             AUGUST 31, 1999
MARK R. BROWN


              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                       James H. Chamblin, Judge

            Donald S. Caruthers, Jr. (Donald S.
            Caruthers, Jr., P.C., on briefs), for
            appellant.

            Mark A. Barondess (Milissa R. Spring;
            Sandground, Barondess, West & New, P.C., on
            brief), for appellee.


     Colleen N. Brown (mother) appeals from a ruling of the

trial court denying her request for a change in custody of the

two children born of her marriage to Mark R. Brown (father).  On

appeal, she contends the court erroneously failed (1) to award

her sole legal custody or joint legal custody with father; and

(2) to order father to discontinue home-schooling the children.

For the reasons that follow, we disagree and affirm the ruling

of the trial court.

                            BACKGROUND

     In accordance with familiar principles, we summarize the

evidence in the light most favorable to the prevailing party

below.  See Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d

102, 105 (1995).  The parties have two children, a daughter Danielle born in 1987 and a son Christopher born in 1991.  When they divorced in 1995, they agreed upon joint legal and physical custody of the children.  Soon thereafter, a dispute arose about Danielle's enrollment in Faith Christian School and mother's shared custody when she planned to live with her paramour.  Following a hearing, the trial court awarded sole legal custody to father but ruled that the parties would jointly decide where to enroll the children in school.

When mother chose not to have the children attend Faith Christian School, father decided to home-school the children, to which mother objected.  Following a hearing on August 21, 1996, the trial court modified its earlier ruling to provide that father had the authority to decide "where and in what manner the parties' minor children are to be schooled."  Father's home-school curriculum was approved by the Director of Pupil Services for the county.

On August 13, 1997, following one year of father's home-schooling, mother moved for sole or joint legal custody of the children, or alternatively, for an order directing that the children attend a specific public elementary school.  Mother complained that father excluded her from participating in her children's lives.  Mother contended that the home-schooling, the assigned homework, and the children's extra-curricular activities detracted from her scheduled time with the children.

- 2 -

She conceded, however, that she supported the children's participation in some of the extra-curricular activities. Father explained that although some of the extra-curricular activities occurred during mother's scheduled time with the children, typically the schedules were not established until after enrollment in the activities. Further, father told the children that he could only guarantee their attendance at these activities during his scheduled time with them.

Although father initially denied mother's request to assist in the home-schooling, he invited her to visit the classroom in early 1997. On that occasion, the tension between the parents detracted from the learning environment, and father determined that in the future it would be best if mother were not present during classroom time. According to his testimony, father encouraged mother's participation in other home-schooling events and suggested that her presence would benefit the children. Mother conducted a field trip and held a monthly art class for several children, including Danielle and Christopher. Father testified that he encouraged mother to be involved with these groups and explained that he initially had not included her name on their home-schooling group's phone lists because mother previously had aired their personal problems to other parents.

Father denied allegations that he forbade the children from attending mother's church. Father testified that he merely

wanted custody of them on Sundays to ensure that they attended church on a regular basis and in a consistent program.

Mother testified that she ended her relationship with her paramour following the court's April 1996 ruling and had no contact with him since he moved out. She also testified that no other man to whom she was not related had been "under my roof while the children were in my custody."

Each party accused the other of inappropriate parenting. As an example of alleged inappropriate discipline, mother testified that father made Danielle stand in the corner on one occasion for an hour and forty minutes until she apologized for being disrespectful. Father offered testimony that mother inappropriately involved the children in the parties' disputes.

Although the children expressed a desire to attend public school, they also praised home-schooling and performed very well in that environment.

Mother offered the expert testimony of Dr. Zuckerman, a licensed clinical psychologist. Dr. Zuckerman supported mother's complaints regarding the children's school environment and its detrimental impact on her relationship with the children. He opined that the children would be better off in a school where both parents felt welcome and over which the parental conflict was not an issue. However, Dr. Zuckerman testified that he was not in a position to make a recommendation regarding child custody.

- 4 -

Father offered the testimony of Dr. Brian Ray, who qualified as an expert in the field of education.  He opined that the children's "home-schooling is working very well."  He agreed that it was important for mother to be as involved as possible in their schooling.  He stated that home-schooling would provide both parents more time to be with their children, which is especially important in divorce situations, and that home-schooling permitted father to integrate his personal "religious philosophical view" into their education, both of which were likely to help the children avoid the negative aspects of peer pressure.  Finally, he opined that the children engaged in sufficient activities outside the home classroom to develop necessary social skills.

<u>ANALYSIS</u>

A party seeking to modify an existing custody order bears the burden of proving that a change in circumstances has occurred since the last custody determination and that the circumstances warrant a change of custody to promote the children's best interests.  <u>See</u> <u>Keel v. Keel</u>, 225 Va. 606, 611-12, 303 S.E.2d 917, 921 (1983); <u>see</u> <u>also</u> Code § 20-124.2(B).  In deciding whether to modify a custody order, the trial court's paramount concern must be the children's best interests.  <u>See</u> <u>Farley v. Farley</u>, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795-96 (1990).  However, the trial court has broad discretion in determining what promotes the children's best interests.  <u>See</u>

Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986).

Code § 20-124.3 specifies the factors a court "shall consider" in determining the "best interests of a child for . . . custody or visitation." Although the trial court must examine all factors set out in Code § 20-124.3, "it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal. See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992).

Here, the trial court expressly considered the "best interests" of the children. Contrary to mother's contention, the court did not elevate the alleged right of father, the children's legal custodian, to home-school the children over the children's best interests. We cannot say on this record that the evidence fails to support the trial court's decision to maintain the status quo, by denying mother's request for sole or joint legal custody or by refusing to prohibit father from home-schooling the children. Although the parties exercised joint physical custody, father had sole legal custody of the

- 6 -

children, and mother bore the burden of proving a material change in circumstances requiring a change in legal custody to safeguard the best interests of the children.

The evidence, viewed in the light most favorable to father, supports the trial court's finding that mother failed to meet that burden. The children were performing well academically and socially in a home-schooling program approved by Loudoun County. Although initially resistant to mother's involvement in the children's education, father made some effort to keep her apprised of their progress and agreed that it would be "beneficial for [mother] to come [to their class] on occasion." The trial court found that the parties had made the children "the battlefield," they could not communicate, and they could not share any decision-making authority over the children. Unable to find that father's home-schooling efforts were inferior to the public school alternative, the trial court determined that the children's best interests would be advanced by continuing with the home-schooling.

We also find that the trial court's decision was not an abuse of discretion, plainly wrong, or unsupported by the evidence. In light of our clearly defined standard of review, it is immaterial that the record, if viewed in the light most favorable to the mother, may support the relief she seeks. The trial court rather than the appellate court "ascertains a witness' credibility, determines the weight to be given to [the

witness'] testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 388, 488 S.E.2d 665, 668 (1997) (en banc). The trial court was entitled to reject the testimony of Dr. Zuckerman, who opined that home-schooling was having a negative effect on the children's education, in favor of the testimony of Dr. Ray, who opined that "home-schooling is working very well" for the parties' children. See id. at 387-89, 488 S.E.2d at 668-69.

Further, the court was not required to award mother sole or joint legal custody or to prohibit home-schooling simply because the children expressed a preference to attend public school. "Although a child's preference 'should be considered and given appropriate weight,' it does not control the custody determination and is just one factor to be considered." Sargent, 20 Va. App. at 702, 460 S.E.2d at 599 (quoting Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986)).

Finally, contrary to mother's contention, the record, viewed in the light most favorable to father, does not support her contention that the trial court erroneously elevated "stability and continuity" over the children's best interest. The record establishes that the trial court considered other statutory factors, including the needs and preferences of the children, the relationship between the children and their parents, and the parents' inability to communicate and cooperate. Nevertheless, the evidence supports the trial

- 8 -

court's finding that the children would benefit from a ruling preserving stability and continuity and that such was in their best interest. The issue in dispute here was the children's education. The record established that Christopher's only experience was in home-schooling, that both children had been home-schooled for almost two years at the time of the hearing, and that home-schooling permitted each parent to spend a greater amount of time with the children. Accordingly, we find that the trial court did not place undue emphasis on the children having stability and continuity in their lives.

For the foregoing reasons, we affirm the trial court's ruling. We deny father's request for an award of attorney's fees and costs on appeal.

Affirmed.

Elder, J., concurring, in part, and dissenting, in part.

I concur in the majority's affirmance of the trial court's ruling declining to grant wife sole legal custody of the parties' children. I also concur in its decision to deny father's request for an award of attorney's fees and costs on appeal. However, I respectfully dissent from the majority's affirmance of the trial court's ruling on mother's request for joint legal custody. Because I believe the trial court applied an incorrect legal standard in denying mother's request for joint legal custody, I would remand to the trial court for further proceedings on that issue.

In resolving disputes between parents over the custody and visitation of minor children, "the court shall give primary consideration to the best interests of the child," Code § 20-124.2, considering the various factors outlined in Code § 20-124.3. In fashioning a custody arrangement that meets this "best interests" standard, a court may award joint custody or sole custody. See id. Sole custody "means that one person retains responsibility for the care and control of [the children] and has primary authority to make decisions concerning the [children]." Code § 20-124.1. Joint custody has several meanings. The court may award

> (i) joint legal custody where both parents
> retain joint responsibility for the care and
> control of the [children] and joint
> authority to make decisions concerning the
> [children] even though the [children's]

- 10 -

> primary residence may be with only one
> parent, (ii) joint physical custody where
> both parents share physical and custodial
> care of the [children] or (iii) any
> combination of joint legal and joint
> physical custody which the court deems to be
> in the best interest of the [children].

Id. (emphasis added). The plain meaning of this statute permits a court to apportion between the parents the ability to make certain decisions regarding the children's upbringing in order to effectuate the children's best interests. See Vasquez v. Vasquez, 443 So. 2d 313, 314 (Fla. Ct. App. 1983) (upholding court's order permitting father to choose children's school based on state's "Shared Parental Responsibility Act," which expressed preference for shared decision-making for divorced parents in upbringing of children but provided that court "may grant to one party the ultimate responsibility over specific aspects of the child's welfare or may divide those aspects between the parties based on the best interests of the child").

This best interests standard applies both to an initial determination regarding custody and to any subsequent requests for modification of custody. See Keel v. Keel, 225 Va. 606, 611, 303 S.E.2d 917, 920-21 (1983).

> Once a court has ruled on matters relating
> to the custody and care of minor children
> . . . , the court retains jurisdiction
> throughout the minority status of the child
> involved. The court, in the exercise of its
> sound discretion, may alter or change
> custody . . . when subsequent events render
> such action appropriate for the child's
> welfare.

- 11 -

Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986) (citation omitted).  Although the best interests of the children remains the court's primary consideration, once a custody order is in effect, a party seeking a change in custody must prove both that a change in circumstances has occurred since the last custody award and that a change in custody is in the best interests of the children.  See Keel, 225 Va. at 611, 303 S.E.2d at 920-21.  Virginia has specifically rejected the "narrow view that once custody is decided it should stay decided absent 'gross changes that threaten harm' to the children."  Id.  Compare Williams v. Williams, 256 Va. 19, 20-22, 501 S.E.2d 417, 417-18 (1998) (plurality opinion) (in dispute between parents in "intact" family and alleged "person with a legitimate interest" (grandparents) seeking visitation with child under Code § 20–124.2, holding that parents' fundamental constitutional right to raise child is acknowledged in statute's requirement that a court "give due regard to the primacy of the parent-child relationship" and that law requires court to make threshold finding of "'actual harm to the child's health or welfare without such visitation'" before reaching "best interests" standard), and id. at 28-29, 30-33, 501 S.E.2d at 421-22, 423-24 (Hassell and Kinser, J.J., dissenting in part and concurring in judgment) (agreeing that parents' constitutional right to raise child requires finding of harm

before state may interfere with that right but asserting that Code § 20-124.2 is unconstitutional because it contains no such requirement), with <u>Dotson v. Hylton</u>, 29 Va. App. 635, 638-40, 513 S.E.2d 901, 903 (1999) (holding that, in dispute between divorced parents over visitation for child's paternal grandmother, <u>Williams</u> standard of harm to child does not govern and court applies statutory standard for visitation by "person with a legitimate interest," which requires only clear and convincing proof that visitation serves best interests of child).

Here, in ruling on the issue of education, the trial court made conflicting observations. It observed that it had to consider whether a particular type of education was in the children's "best interest." However, it also relied heavily on language in <u>Martin v. Stephen</u>, 937 P.2d 92 (Okla. 1997), to hold that, absent "'most unusual conditions'" or "'compelling circumstances,'" it "ha[d] no business . . . interfering" with the legal custodian's "right to decide where the children are educated."

As discussed above, Virginia's child custody statutes specifically provide that the court must consider the best interests of the children. <u>See</u> Code §§ 20-124.2, 20-124.3. The mere fact that Code § 22.1-254.1 provides generally that home-schooling of children by their parents, under certain circumstances, "is an acceptable alternative form of education"

- 13 -

does not alter the court's more specific statutory duty under Code § 20-124.2 to make child custody decisions based on the best interests of the children. Parents have a fundamental constitutional right to make decisions regarding child-rearing, and the state may not interfere with this right absent the compelling state interest of protecting the child's health or welfare. See, e.g., Williams, 256 Va. at 21, 501 S.E.2d at 418 (plurality opinion); id. at 28-29, 501 S.E.2d at 421-22 (Hassell and Kinser, J.J., dissenting in part and concurring in result). However, where the dispute over child-rearing is between two parents involved in a custody dispute, it may be inherently impossible to preserve that fundamental right with respect to each parent simultaneously. Under those circumstances, therefore, the statute provides that the best interests standard controls. See Dotson, 29 Va. App. at 638-40, 513 S.E.2d at 903; see also Clark v. Reiss, 831 S.W.2d 622, 624-25 (Ark. Ct. App. 1992) (upholding application of best interests test to prevent custodian from home-schooling children in light of deficiencies in specific program and impact of home-schooling on non-custodial parent's visitation time and ability to participate in their schooling); Bowman v. Bowman, 686 N.E.2d 921, 926-27 (Ind. Ct. App. 1997) (upholding application of best interests test to the "particular circumstances" of that case as ground for removing children from custody of parent who wished to home-school them); King v. King, 638 N.Y.S.2d 980, 981 (N.Y.

- 14 -

App. Div. 1996) (upholding application of best interests test to award custody to children's father where "manner in which [mother] structured and conducted the home instruction . . . was not ideal"); <u>Elrod v. Elrod</u>, 481 S.E.2d 108, 111 (N.C. Ct. App. 1997) (acknowledging best interests standard but noting that father earlier had agreed to entry of order permitting home-schooling and had shown no change of circumstances permitting court to revisit home-schooling issue); <u>In re Reiss</u>, 632 N.E.2d 635, 640-42 (Ill. App. Ct. 1994) (citing statutory "negative" best interests test permitting custodian to make certain decisions unless they would "clearly be contrary to the best interests of the child" and remanding for additional evidence). <u>But</u> <u>see</u> <u>Martin v. Stephen</u>, 937 P.2d 92, 98-100 (Okla. 1997) (Simms, J., concurring) (noting that custodial parent's "rights and obligations of custody are extensive and operate against third parties, including the noncustodial parent" such that custodial parent's decision to home-school children is not grounds for change of custody unless it "directly and adversely affected [children] in [a] material way or posed a serious threat to their health, safety or welfare"); <u>Rust v. Rust</u>, 864 S.W.2d 52, 56-57 (Tenn. Ct. App. 1993) (reciting best interests standard for custody decisions but holding that once initial custody decision has been made, custodial parent retains same fundamental autonomy over childrearing decisions that married parents would have absent

- 15 -

evidence that parent is no longer fit and, therefore, that custodial parent may home-school child unless home-schooling "poses a substantial danger to the child's health or safety or places a substantial social burden on him").  See generally J. Bart McMahon, An Examination of the Non-Custodial Parent's Right to Influence and Direct the Child's Education:  What Happens When the Custodial Parent Wants to Home Educate the Child, 33 U. Louisville J. Fam. L. 723 (1995).

Because Code §§ 20-124.1 and 20-124.2 permit the court to fashion any combination of joint legal custody which is in the best interests of the children, the trial court had authority under Virginia's statutory scheme to bifurcate the issues over which mother and father have decision-making authority in this case, giving mother the authority to make decisions regarding the children's education while reserving to father the ability to make all other decisions associated with legal custody.

Therefore, I would hold that the trial court erred in concluding it could not revisit the child custody issue absent unusual or compelling circumstances and would remand to the trial court for further proceedings in keeping with the best interests standard, including the option of joint legal custody tailored to allow mother to choose where to educate the children while reserving to father all other decisions associated with legal custody.